# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO 4:00-CR-0281** |
| | : | |
| v. | : | **(Chief Judge Conner)** |
| | : | |
| **JOHN CIOFFI MUSSARE, III** | : | |

## MEMORANDUM

Presently before the court is defendant John Mussare, III's motion (Doc. 463) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.[1] On June 15, 2012, the court denied Mussare's motion (Doc. 463) in part and ordered an evidentiary hearing on whether Mussare's counsel rendered ineffective assistance due to his failure to inform Mussare of his absolute right to testify at trial. The court held the evidentiary hearing on May 15, 2013. For the reasons that follow, the court will deny the motion (Doc. 463).

## I. Background

The case *sub judice* is the result of the brutal assault of Clinton James Taylor ("Taylor") by Mussare and his friend William R. Bruce ("Bruce") on Monday, January 24, 2000. Taylor was tied up, kicked, burned with cigarettes, pistol-whipped with a paintball gun, and beaten with various objects. The letters "I M THIEF" were burned onto his torso. At trial, the government introduced significant evidence that the beating was due to the failure of Taylor or his

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

roommate Jim Kane ("Kane") to acquire drugs for Mussare and Bruce or to return the $115 that Bruce or Mussare provided to them for the purpose of purchasing drugs. The next day, Mussare drove Taylor to his mother's house, where Taylor obtained $500 that he provided to Mussare.

On October 11, 2000, a Grand Jury returned a four-count indictment against Mussare.[2] (Doc. 1). The Grand Jury returned a five-count superseding indictment on April 25, 2001, charging Mussare with: (1) conspiracy to possess with intent to distribute and distribution of heroin and marijuana in violation of 21 U.S.C. § 846; (2) aiding and abetting the attempted possession with intent to distribute marijuana by a person under the age of 21, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 859 and 18 U.S.C. § 2; (3) aiding and abetting the possession with intent to distribute heroin by a person under the age of 21, in violation of 21 U.S.C. §§ 841(a)(1) and 859 and 18 U.S.C. § 2; (4) conspiracy to use extortionate means to collect and attempt to collect an extension of credit and to punish a person for the non-repayment of an extension of credit, in violation of 18 U.S.C. § 894; and (5) using extortionate means to collect and attempt to collect an extension of credit and to punish a person for the non-repayment of credit and aiding and abetting same, in violation of 18 U.S.C. § 894 and 18 U.S.C. § 2. (Doc. 180).

---

[2] David Shay and Bruce were also named as co-defendants in the initial indictment. David Shay later agreed to cooperate with the government and testified against Bruce and Mussare at trial. Shay and Bruce are not parties to the instant motion.

Mussare proceeded to trial in June of 2001 and was represented by Peter T. Campana, Esquire ("Attorney Campana"). In his opening statement, Attorney Campana argued that Mussare provided Kane with $115 to buy marijuana, but that he did not provide him with an extension of credit. (Doc. 324 at 41-42). Attorney Campana specifically denied that Mussare had anything to do with the beating and burning of Taylor. (Id. at 40-41). As part of the defense's case, Mussare called numerous witnesses who testified to Mussare's reputation for being honest, law-abiding, and nonviolent. (See Docs. 328 at 156-183; 329 at 82-108).

On June 29, 2001, a jury found Mussare guilty on Counts IV and V and guilty of the lesser-included offense in Count I of conspiracy to possess marijuana. The Honorable Judge Malcom Muir sentenced Mussare to 210 months incarceration. (See Doc. 366). In a precedential opinion dated April 28, 2005, the Third Circuit affirmed Mussare's conviction, but remanded for resentencing in light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). (Doc. 384). See United States v. Mussare, 405 F.3d 161 (3d Cir. 2005). On remand, Judge Muir imposed the same sentence previously received by Mussare. (See Doc. 442). The Third Circuit affirmed the judgment of sentence on November 30, 2007. (Doc. 460). Mussare thereafter petitioned the United States Supreme Court for a Writ of Certiorari. The Supreme Court denied the petition on October 14, 2008. 129 S. Ct. 438 (No. 08-6267).

On October 13, 2009, Mussare filed his motion (Doc. 463) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and a brief in support (Doc. 464).

Mussare asserted several grounds of ineffective assistance on behalf of Attorney Campana, including that Attorney Campana did not inform Mussare of his right to testify. (See Docs. 463, 492, 506, 508). Mussare attached a sworn statement from Attorney Campana which states:

> when we discussed the matter [of whether Mussare would testify] I advised Mr. Mussare that he should not testify and that I believed it was in his best interest not to do so. My decision was based on Defendant's age and lack of understanding as to what could happen on cross-examination. Furthermore, I did not believe the Government had presented a persuasive case. I did not go into great detail regarding the Defendant's Fifth Amendment right to testify when I discussed the matter with him. However, I believe that the defendant trusted my judgment and followed my advice.

(Doc. 506 at 22). On June 15, 2012, the court denied Mussare's motion (Doc. 463) on all grounds except whether Attorney Campana rendered ineffective assistance due to his failure to inform Mussare of his right to testify. (Doc. 509). The court reasoned that Attorney Campana's statement provided insufficient information to resolve the question. (Id. at 16). The court ordered an evidentiary hearing on this issue and appointed counsel to represent Mussare at the hearing.

The court held the evidentiary hearing on May 15, 2013. Attorney Campana testified concerning whether he informed Mussare of his right to testify at trial. (Doc. 531 at 4-23). Attorney Campana confirmed the contents of his sworn statement and testified that he believed it was not in Mussare's best interests to testify. (Id. at 6-7). He further explained that "I didn't want Mr. Mussare to give [the prosecutor] the chance to put any more incriminating evidence in front of the jury." (Id. at 12). He was concerned that the government could exploit Mr.

4

Mussare's inconsistent statements or contradictions with other witnesses' testimony. (Id.) When asked whether the decision not to testify was Mussare's decision or his decision, Attorney Campana testified that he could not say under oath that he told Mussare that "it was his decision absolutely and he could overrule me, you know." (Id. at 7). He stated that his typical practice is to convey to a client "that they have the right to testify and that we should decide together whether they should exercise that right or not." (Id. at 10).

The Assistant United States Attorney who handled the trial, John J. McCann ("Attorney McCann"), also testified concerning whether Attorney Campana informed Mussare of his right to testify. (Id. at 71-77). Attorney McCann testified that during the afternoon of June 20, 2001, he asked Attorney Campana if Mussare was planning on testifying. (Id. at 73-74). Attorney Campana responded that Mussare hadn't decided yet. (Id. at 74). The following Monday, Attorney Campana told Attorney McCann that Mussare was not going to testify. (Id. at 75-76).

At the evidentiary hearing, Mussare testified that, at the end of the defense's case, he asked Attorney Campana to put him on the stand because "[e]verybody is lying." (Id. at 24). According to Mussare, Attorney Campana responded "no, you can't testify." (Id.) Mussare claimed that he did not understand that he had a constitutional right to testify and that it was his decision to make. (Id. at 24-25).

Mussare also went into detail concerning what he would have said if he had testified. (Id. at 27-60). He testified chronologically as to his actions and whereabouts from January 21, 2000 to January 25, 2000. Most relevant for the

5

court's purposes, he testified that he never provided any money to either Taylor or Kane. (Id. at 39, 57-58). He stated that he was only interested in selling marijuana that he had brought with him from Virginia in order to finance his trip. (Id. at 30, 39-40). He also admitted that he branded Taylor,[3] but testified that he did so because he was intoxicated from heavy alcohol and marijuana use, and not in retaliation for any drug debt. (Id. at 51). Mussare stated that he gave Taylor a ride to his mother's house the next day because he "honestly felt bad for him." (Id. at 54). He testified that Taylor used the $500 his mother gave him to purchase heroin. (Id. at 55-56). Mussare claimed that he never received a dime of the money and did not even know it was in the car with him. (Id. at 56).

After the hearing, the court instructed the parties to file supplemental briefing on the issue and to focus on whether Mussare was prejudiced by Attorney Campana's alleged ineffective assistance of counsel. (See Docs. 532, 533). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an

---

[3] Oddly and chillingly, Mussare testified that he used a blow torch and a screwdriver to burn Taylor's chest. (Doc. 531 at 51) ("And I burned him. There was a blow torch there. There was a screwdriver there. I don't know where it came from. I don't remember that."). In contrast, at trial, David Shay and Taylor himself testified that Mussare used a hot coat hanger to burn Taylor. (See Docs. 336 at 95, 337 at 82).

6

objective standard of reasonableness and (2) that the deficient representation was prejudicial. See id. at 687-88.

To satisfy the prejudice prong, the defendant must show that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. Hence, it is necessary for the court to examine the totality of the evidence before the jury. Id. at 695. The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. Id. at 697. Indeed, the Third Circuit has interpreted Strickland as requiring courts to first determine the prejudicial effect of an allegedly deficient representation before determining whether that representation was in fact deficient. McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993).

## III. Discussion

The court need not definitively determine whether Attorney Campana failed to inform Mussare of his right to testify because it is not reasonably probable that, had Mussare testified, the outcome of the trial would have been different. As a preliminary matter, Mussare does not assert that his testimony could have changed the jury's guilty verdict on the lesser-included offense of conspiracy to possess marijuana under Count I. (Doc. 532 at 24). Mussare only contends that his testimony would have created a reasonable doubt concerning Counts IV and V: conspiracy to use extortionate means and the use of extortionate means to collect

7

and attempt to collect an extension of credit and to punish a person for the non-repayment of an extension of credit under 18 U.S.C. § 894.

Mussare avers that his testimony would have affected two aspects of his conviction on Counts IV and V: 1) Mussare asserts that he did not provide Taylor or Kane any money that weekend and therefore there was no extension of credit; and 2) Mussare alleges that he participated in the brutal assault of Taylor, but that it was not due to any drug debt, therefore negating the government's assertion that Mussare engaged in extortion to collect an extension of credit and punished Taylor for the non-repayment of an extension of credit. Mussare contends that his testimony would have offered a reasonable alternative to the conflicting testimony of Taylor and Kane, that it was consistent with other witnesses' testimony on many details of the incidents, and that the admission that he branded Taylor would have strengthened his credibility with the jury.

The court reviewed the record from both the trial and the evidentiary hearing. The court acknowledges that some of Mussare's testimony concerning the general details of the weekend was consistent with many other witnesses' testimony. However, the court remains unconvinced that a jury could have possibly found Mussare not guilty of Counts IV and V.

Mussare testified that he had brought marijuana with him from Virginia to sell in Pennsylvania. (Doc. 531 at 30). He testified that he never gave either Taylor or Kane any money and that he was only interested in selling marijuana. (Id. at 39-40). This testimony would have directly contradicted Attorney Campana's opening

8

statement and his entire theory of the defense.[4] Specifically, Attorney Campana specifically stated in his opening that Mussare did provide Kane with $115 to buy marijuana. (Doc. 324 at 41). He also stated that Mussare did not bring any marijuana with him to Williamsport. (Id. at 42). Such a contradiction would have reflected poorly on either Mussare or Attorney Campana, or both. Either way, it would have been bound to have a negative effect on his chances with the jury. Mussare is correct that Attorney Campana could have adjusted his closing argument to reflect Mussare's testimony, but at that point the damage would have already been done. Mussare's testimony would have also contradicted the testimony of his own defense witness, Jason Tortellet, who testified that Mussare never brought marijuana with him from Virginia when he traveled to Williamsport, but instead bought it in Williamsport. (Doc. 329 at 109).

Mussare asserts that his testimony alleging that he did not provide money to either Taylor or Kane would have offered a plausible alternative to the conflicting testimony of those two witnesses. (Doc. 532 at 9-16). Mussare specifically highlights Taylor and Kane's conflicting and confusing testimony concerning the source of the money and the purpose for the money provided to them. (Id.) This argument is unavailing. Kane and Taylor may have testified inconsistently concerning the exact details of the exchange of money, but Mussare ignores the fact that *they both testified that money was provided by either Bruce or Mussare for the purpose of*

---

[4] The court has already determined that Attorney Campana's overall trial strategy did not qualify as ineffective assistance of counsel. (See Doc. 509 at 7-14).

*purchasing some form of drug.* Their testimony in this regard was consistent with numerous government witnesses who testified that there was an exchange of money or that money was owed. Moreover, defense counsel cross-examined these witnesses concerning their various inconsistencies *ad nauseum*. (See Docs. 337 at 33-176, 326, 327 at 35-87). Defense counsel also addressed those same inconsistencies in their closings. (See Doc. 331 at 52-54, 57, 58, 63-66, 74, 77, 78, 80). Yet the jury still convicted Mussare of Counts IV and V. It is not reasonably probable that Mussare's testimony that he did not provide either Taylor or Kane with money that weekend would have changed the outcome of the trial.

Additionally, Mussare admitted that he was the one who burned Taylor. (Doc. 531 at 51). Indeed, the only material difference between the prosecution's case and Mussare's testimony on this brutal detail is that Mussare testified that he did so because he was drunk and high, and not to punish Taylor for any money owed to him. (Id.) He claimed that he originally intended to write "I'm a scum bag" or "I'm a junkie" but that there was not enough room on his chest so he just wrote "thief." (Id.) Mussare further stated that he gave Taylor a ride to his mother's house the next morning because he "honestly felt bad for him." (Id. at 54).

The court disagrees that this testimony could have made a difference in the outcome of the trial. Again, such testimony would have been directly contradictory to his own attorney's opening statement. Attorney Campana specifically denied that Mussare had anything to do with beating and burning Taylor. (Doc. 324 at 40-41). Attorney Campana claimed that Mussare has "a reputation for being an honest

10

person, a nonviolent person, who would not do the kind of things that these individuals accuse him of doing." (Id. at 42). Moreover, it would have contradicted the testimony of Mussare's legions of character witnesses, who testified to Mussare's law-abiding, non-violent nature shortly before Mussare would have taken the stand.[5] (See Docs. 328 at 156-183, 329 at 82-108). Finally, Mussare's testimony would have been directly contradictory to the numerous witnesses who testified that Taylor was beaten because he owed money.

Finally, the court observed Mussare's testimony firsthand. He recounted the horrific events of that weekend with a pronounced apathy that was frankly disturbing. He described the victim in denigrating terms, and he began spewing forth vitriol about Taylor before the government cut him off. (Doc. 531 at 65) ("I did find out [that weekend] that [Taylor] was a heroin addict, *a thief*, a scum bag, a guy that –") (emphasis added). Mussare repeatedly admitted that he was a drug dealer who just quit his job and who spent most of that weekend consuming vast amounts of marijuana and alcohol and doing "pretty much everything that's against the law." (Id. at 28-40, 43-49, 51, 53, 54, 64-67). Under the circumstances, it defies credulity to suggest that a jury would have found any of his factual testimony remotely credible. See United States v. Caracappa, 614 F.3d 30, 48-49 (2d Cir. 2010) (denying a § 2255 motion based on defense counsel's failure to advise defendant of his right to testify because of the district court's assessment of defendant's

---

[5] Mussare stated that he spoke with Attorney Campana about testifying at the end of the defense's case. (Doc. 531 at 24).

credibility at a post-conviction evidentiary hearing and its conclusion that defendant's trial testimony would not have changed the outcome of the proceeding). Moreover, his testimony would have been inconsistent with the overwhelming evidence against him. See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (stating that in determining prejudice under Strickland, the court must consider the weight of the evidence against the defendant). It is not reasonably probable that, had Mussare testified, the outcome of the trial would have been any different. Thus, the court will deny his motion to vacate based on ineffective assistance of counsel.

## IV. Conclusion

For the foregoing reasons, the court will deny Mussare's motion to vacate (Doc. 463). An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
CHRISTOPHER C. CONNER
Chief Judge, Middle District of Pennsylvania

Dated: October 16, 2013